**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

May 28, 2013

Elisabeth A. Shumaker
Clerk of Court

---

JOSE JUAN FRANCISCO; VINCIO GONZALEZ; JOSE JUAREZ RAMIREZ; PEDRO GREGORIO RAFAEL,

    Plaintiffs-Appellants,

v.

ALEJO SUSANO, individually and in his official capacity; WILEY INNOVATIONS CONSTRUCTION CORP., a Nebraska corporation,

    Defendants-Appellees.

No. 12-1376
(D.C. No. 1:10-CV-00332-CMA-MEH)
(D. Colo.)

---

### ORDER AND JUDGMENT[*]

---

Before **McKAY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

Plaintiffs appeal from the denial of compensatory and punitive damages on their claims under the Trafficking Victims Protection Act (TVPA), as amended by the Trafficking Victims Protection Reauthorization Act (TVPRA).  *See* 18 U.S.C.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1595. After entering a default judgment against the absent defendants, the district judge decided the general statutory allowance of "damages," *see id.* § 1595(a), did not include punitive damages. She also decided compensatory damages, beyond those already awarded plaintiffs under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206, 216, were unavailable on the TVPA claims for lack of evidence and an associated metric to guide their calculation. As a result of these rulings, only nominal damages of one dollar were awarded on plaintiffs' TVPA claims.

The rulings on punitive and compensatory damages are both legal determinations. *See Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (availability of punitive damages under TVPA reviewed de novo); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 458 (7th Cir. 2006) (availability of compensatory and punitive damages under federal statute reviewed de novo). As such, they are subject to de novo review whether the matter under consideration is the initial default judgment or the denial of plaintiffs' ensuing motion to alter or amend that judgment, *see Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201-02 (10th Cir. 2012). For reasons detailed below we reverse and remand for further proceedings.[1]

---

[1] Like the district court, we are hampered by a lack of adversarial briefing. The defendants did not appear either in the district court or in this court.

## I. DISTRICT COURT PROCEEDINGS

When plaintiffs moved for default judgment, they requested compensatory and punitive TVPA damages in addition to the unpaid wages and attendant liquidated damages (doubling the unpaid wages) sought under the FLSA. The judge set a hearing for plaintiffs to show why the requested TVPA damages were justified by defendants' alleged conduct and the applicable law. At the hearing she emphasized the narrowed focus of the relevant inquiry: the "whole purpose of th[e] hearing was to tell [the court] what is the authority" for awarding the requested TVPA damages.[2] App. 73. She repeatedly indicated additional *evidence* of damages—in particular, proffered testimony from plaintiff Gonzalez—was unnecessary, because the question was one of legal authority. *See* App. at 71-72; 79-80. At the close of the hearing, she reserved ruling on TVPA damages and allowed plaintiffs "to submit further briefing to substantiate any claims for damages in excess of the actual damages and the liquidated damages [under the FLSA] that you have outlined already." *Id.* at 79.

---

[2] The judge did voice some doubts about whether the alleged conduct was even actionable under the substantive provisions of the TVPA, 15 U.S.C. § 1589 (forced labor) and § 1590 (trafficking with respect to forced labor), but made no definitive holdings in this regard. *See* App. at 72-73, 75-76. If the complaint were insufficient to state a TVPA claim and plaintiffs were unable to cure it by amendment, a default judgment on the claim would not be warranted, *see Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010), and any question of appropriate TVPA damages would be immaterial. But while the legal sufficiency of a complaint may thus be challenged by the defaulting party, *see, e.g., id.*; *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010), defendants have never appeared in the case to make such a challenge. Since the adequacy of a complaint is, even in the default context, a matter subject to waiver principles, *see, e.g., Jennings v. Rivers*, 394 F.3d 850, 854 n.3 (10th Cir. 2005);
(continued)

Plaintiffs submitted a supplemental memorandum of law, citing lower court TVPA cases approving compensatory damages over and above promised wages, as well as punitive damages. *See* App. at 64 (citing, in particular, *Pena Canal v. de la Rosa Dann*, No. 09-03366 CW, 2010 WL 3491136 (N.D. Cal. Sept. 2, 2010), which awarded default judgment for compensatory damages "consisting of . . . a fair hourly wage for [plaintiff's] work" and a recovery "for the emotional distress and other tort damages caused by [defendant]," as well as punitive damages, *id.* at *4). In support of their request for wage-related damages greater than those available under the FLSA, plaintiffs attached a government document specifying prevailing wage rates in the area for the kind of work they had performed. *See* App. at 68. The $18.50 hourly rate they sought on this basis substantially exceeded the promised wage rates ($10 or $11 per hour) they were ultimately awarded under the FLSA.³

---

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *United States v. Conces*, 507 F.3d 1028, 1038-39 (6th Cir. 2007), we do not sua sponte test the sufficiency of plaintiffs' TVPA allegations. In short, we shall presume "the [unchallenged] default judgment establishes [defendants'] liability to plaintiff." *Jennings*, 394 F.3d at 854 n.3.

³ Actually, the FLSA wages awarded—based on rates promised to plaintiffs—appear to exceed FLSA allowances in one respect. The FLSA remedies two distinct violations: failure to pay statutorily set minimum wages, 29 U.S.C. § 206, and failure to compensate overtime work, *id.* § 207. Overtime work must be compensated "at a rate not less than one and one-half times the *regular rate at which* [*the worker*] *is employed*," *id.* § 207(a)(1) (emphasis added), so FLSA overtime claims look to the actual amount the parties agreed upon for compensation, *see Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304-05 (10th Cir. 2011). But minimum-wage claims rest on the legislatively set minimum rate for regular time, *see* 29 U.S.C. § 206(a)(1), so the remedy for such claims is recovery of "the amount of [the employee's] unpaid *minimum wages*," *id.* § 216(b) (emphasis added), not recovery of promised wages. In
(continued)

In its ensuing default judgment, the district court refused to award plaintiffs any compensatory or punitive damages for the TVPA claims. The court's analysis, particularly on the question of punitive damages, was not fully articulated. The court noted it was not persuaded by the fairly scant case law cited by plaintiffs supporting punitive damages, but offered no authority or rationale for its contrary conclusion that the general statutory allowance of "damages" excludes punitive damages. The court merely stated that "[t]he statute offers no guidance regarding the appropriate damage award, and the precedent on this point is limited." *Francisco v. Susano*, No. 10-cv-00332-CMA-MEH, 2011 WL 5593165, at *3 (D. Colo. Nov. 16, 2011). The court also decided any claim for damages beyond the promised wages awarded under the FLSA failed for lack of evidence and a corresponding metric for the calculation of actual damages. *Id.*

Plaintiffs filed a motion to alter or amend the judgment. They claimed error in holding punitive damages unavailable under the TVPA, and suggested either an amount doubling the promised wages awarded under the FLSA or an amount accounting for the higher prevailing wage rate (again supported by the government documentation). As for compensatory damages, they argued they should not have penalized for not putting on evidence at the hearing when the court itself had

---

basing its FLSA award on promised rates substantially higher than the statutory minimum wage, the trial judge exceeded the prescribed remedy for plaintiffs' § 206 claims. But the error may prove harmless in light of our holding that lost wages determined at the even higher prevailing rates sought by plaintiffs under the TVPA could properly be awarded on remand.

forestalled the introduction of testimony from a proffered witness because the only issues of concern were legal. They also attached extensive affidavits detailing the inhumane treatment set out in the complaint and the resulting harm they endured.

The judge denied the motion in pertinent part, though she retreated from her earlier reliance on evidentiary insufficiency as a complemental rationale for denying TVPA damages. While faulting plaintiffs for not providing evidence establishing such damages with their initial motion for default judgment, she did not hold this omission sufficient to dispose of the matter.[4] Rather, she explained, the evidentiary record (including the newly submitted affidavits) was "immaterial," because "Plaintiffs failed to persuade the Court that it had authority to award the damages requested." *Francisco v. Susano*, No. 10-cv-00332-CMA-MEH, 2012 WL 3638774, at *3 (D. Colo. Aug. 23, 2012). No further rationale was given to bolster the summary holding that the court lacked the necessary legal authority to award the requested compensatory and punitive damages.

## II. DAMAGES AVAILABLE UNDER THE TVPA

### A. Analytical Framework

Two Supreme Court decisions guide any inquiry into the availability of damages for a federal statutory cause of action. In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), the Court reaffirmed a basic principle: "absent

---

[4] Nor do we. The governing rule clearly contemplates an evidentiary hearing when needed for a party to establish damages. *See* Fed. R. Civ. P. 55(b)(2)(B).

clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."[5] *Id.* at 70-71; *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."). Applying that principle, *Franklin* reversed the lower courts for limiting remedies available for sexual harassment in violation of Title IX of the Education Amendments of 1972 to back pay and prospective relief. It considered Congress's remedial intent in the context of the common-law understanding that "the denial of a remedy [i]s the exception rather than the rule," which prevailed both before and after a right of action was implied under Title IX. *Franklin*, 503 U.S. at 71 (internal quotation marks omitted). Since Congress had "made no effort . . . to alter the traditional presumption in favor of any appropriate relief for violation of a federal right," the Court concluded there was no legislative limitation on such relief. *Id.* at 72-73. Rejecting the defendants' objections regarding the impropriety of money damages in Title IX cases, the Court decided such relief was available to the plaintiff, *see id.* at 76.

---

[5] As the Court pointed out, this principle contrasts starkly with that governing the analytically prior question of a right to sue under a federal statute, where courts must "examine the text and history of a statute to determine [affirmatively] whether Congress intended to create a right of action." *Franklin*, 530 U.S. at 66 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979)).

Ten years later, the Court expanded on the *Franklin* analysis, specifically with respect to the "appropriate relief" prong, in a case involving the availability of punitive damages under Title VI of the Civil Rights Act of 1964. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002). The Court summarily invoked the *Franklin* presumption and then turned its attention to the question whether punitive damages were appropriate under Title VI when a funding recipient violated its correlative obligations to the detriment of a third party. Guiding the inquiry were (1) the proper legal characterization of the statute and hence the type of liability involved (contract, tort, equity), *id.* at 186-87, and (2) the traditional remedial aim "'to make good the wrong done,'" *id.* at 189 (quoting *Bell*, 327 U.S. at 684). The Court noted Congress enacted the statute pursuant to the Spending Clause, and the reciprocal obligations it imposed were contractual in character, i.e., voluntarily and knowingly accepted by funding recipients. *Id.* at 186-87. A remedy for noncompliance would therefore be appropriate under *Franklin* "only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Id.* at 187. "[R]elief traditionally available in suits for breach of contract" would have been tacitly accepted and hence appropriate, "[b]ut punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract" and hence would not be appropriate. *Id.* Further, by the same token, "the wrong done" in the contractual setting "is 'made good' when the recipient *compensates* . . . for the loss caused by th[e] failure [to comply with its obligations]"—and because "[p]unitive

damages are not compensatory" they "are not embraced within the [make-good-the-wrong-done] rule," *id.* at 189. For these reasons, the Court concluded punitive damages were not available.

In sum, *Franklin* and *Barnes* direct a two-step inquiry: "First, we are invited to determine whether there is any clear indication of congressional intent to limit the presumption in favor of any and all appropriate damage remedies; second, absent any such indication, we are invited to determine whether the remedy in question is 'appropriate.'" *Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 789 (6th Cir. 1996)[6]; *see also Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 670-72 (7th Cir. 1996) (holding punitive damages available under Railway Labor Act (RLA) because "(1) Congress has [not] indicated punitive damages are not recoverable under the RLA and (2) punitive damages are . . . appropriate under the RLA"). The second step of the inquiry looks to the nature of the statutory right involved and whether the desired remedy rectifies the wrong done when that right is violated. We turn now to the TVPA and the remedies at issue in this case.

---

[6] Noting that punitive damages were not at issue in *Franklin*, the *Moreno* court was "by no means sure" it had to engage in the two-step inquiry summarized above when punitive damages were at issue, but it did so "out of an abundance of caution." 99 F.3d at 789. With the benefit of the subsequent *Barnes* decision, it is now clear the analysis of punitive and compensatory damages is the same—a result entirely consistent with the scope of the operative presumption, which covers "*any* appropriate relief."

B. **Punitive Damages**

Punitive damages are a well-established component of traditional common law remedies. *See, e.g.*, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409-10 (2009). The Court has, accordingly, recognized punitive damages as a remedy under various federal statutes that did not expressly provide for such relief. *See, e.g.*, *Smith v. Wade*, 461 U.S. 30, 35-36 (1983) (addressing remedy under 42 U.S.C. § 1983); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975) (addressing remedy under 42 U.S.C. § 1981). Indeed, *Barnes* itself reflects the presumptive availability of punitive damages for federal statutory violations, though of course it ultimately held such relief was not appropriate under the statute it reviewed.

The question, therefore, at the first step of the *Franklin* inquiry is whether Congress has indicated an intent to exclude punitive damages from the full range of common law remedies otherwise presumptively afforded in the TVPA. *See Franklin*, 503 U.S. at 70-71. In specifying the relief available, the statute refers broadly to "damages." 18 U.S.C. § 1595. "[T]he term 'damages' is ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three."[7] *Ditullio*, 662 F.3d at 1096. Under the circumstances, we cannot say the

---

[7] Legislative history does not clarify the matter. An early draft's reference to "actual damages [and] punitive damages" was ultimately replaced with the current reference to "damages," but "[n]either the significance of this change nor the reason for it appear in the legislative history." *Ditullio*, 662 F.3d at 1098 n.5 (internal quotation marks omitted). If the intent was to exclude punitive damages, the obvious revision would have been retention of the reference to *actual* damages as a limiting

(continued)

TVPA excludes punitive damages. First of all, as *Franklin* pointed out, *see supra* note 5 and accompanying text, the onus is on negation, not affirmation: traditional remedies are available "absent *clear direction to the contrary* by Congress." *Franklin*, 503 U.S. at 70-71 (emphasis added). Ambiguity is not clear direction.

      Further, evaluating the TVPA's civil remedy in light of the contemporary legal landscape, *see id.* at 71-72 (considering state of the law when statute was passed and amended in determining available remedy), only buttresses our conclusion that the text does not exclude punitive damages. As noted below in connection with the appropriate-relief step in the inquiry, the TVPA addresses tortious conduct—indeed, conduct so reprehensible Congress made it criminal even before adding the civil remedy in 2003. Under settled principles of tort law, "punitive damages are 'awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future[,]'" and are specifically warranted for "'conduct involving some element of outrage similar to that usually found in crime.'" *Ditullio*, 662 F.3d at 1096-97 (quoting Restatement (Second) of Torts § 908 and cmt. b. (1979)). The Supreme Court has repeatedly acknowledged the traditional use of punitive damages in tort law and, twenty years before Congress created the TVPA's civil remedy, confirmed the availability of punitive damages under § 1983, stating it could "discern no reason why a person whose federally

---

specification of remedy. Unqualified use of the general term "damages," especially after an express recognition of the two relevant sub-types of damages, just as likely suggests a mere simplification of reference rather than any truncation of referent.

guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action." *Smith*, 461 U.S. at 48-49. Against this backdrop, Congress' use of the unqualified term "damages" to specify the remedy for the criminal conduct it made civilly actionable in § 1595 cannot be considered a clear direction to exclude punitive damages. And, it is worth noting, that provision was enacted well after *Franklin* explained that such a clear direction would be necessary if Congress intended to limit the relief available.

Turning to the second step in the inquiry, regarding the appropriateness of the remedy sought, we ask whether punitive damages are a proper part of righting the wrong done by violation of the TVPA. That wrong involves injury to basic rights of personal liberty, safety, and security traditionally protected at common law, not (as in *Barne*s) rights dependent on contract for their creation and enforcement.[8] The TVPA imposes criminal and civil liability for knowingly obtaining, providing, benefitting from, or trafficking in labor or services secured by means of force or physical restraint, threats of force or physical restraint, harm or threats of serious harm, abuse or threatened abuse of legal process, or a scheme or plan intended to make a victim believe serious harm or physical restraint will be imposed if labor or services are not performed. *See* 18 U.S.C. §§ 1589 (forced labor), 1590 (trafficking), 1595 (civil penalty). In providing a civil remedy for such conduct, the TVPA plainly "creates a

---

[8] We note the TVPA was enacted under Congress' Commerce Clause powers, not the Spending Clause powers relied on for the contract remedy addressed in *Barnes*. *See Ditullio*, 662 F.3d at 1097 n.4.

cause of action that sounds in tort." *Ditullio*, 662 F.3d at 1096. Thus, in assessing the appropriateness of a remedy we look "to the common law of torts . . . with such modification or adaption as might be necessary to carry out the purpose and policy of the statute." *Id.* at 1097 (quoting *Smith*, 461 U.S. at 34) (alteration omitted).

As noted above, the traditional use of punitive damages is to punish and deter misconduct involving an element of outrage. The TVPA "creates a cause of action for tortious conduct that is ordinarily intentional and outrageous"—what "Congress described as 'a contemporaneous manifestation of slavery.'"[9] *Id.* at 1098 (quoting Pub. L. No. 106-386, § 102, 114 Stat. 1464, 1466 (2000)). "Such conduct obviously meets the common law standards for award of punitive damages[.]" *Id.* And the purpose and policy of the statute require no modification of the common law understanding: "permitting punitive damages is consistent with Congress' purposes in enacting the TVPA [and later including a civil remedy in the TVPRA], which include increased protection for victims of trafficking and punishment of traffickers." *Id.* We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595. *See id.*; *see also Doe v. Howard*, No. 1:11-cv-1105, 2012 WL 3834867, at *4 (E.D. Va. Sept. 4, 2012) (following *Ditullio* to hold "[p]unitive damages are available under the TVPA because the Act's

---

[9] Congress was prominently focused on sexual exploitation, but also made it clear that "[t]rafficking in persons is not limited to the sex industry. This growing transnational crime also includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide." Pub. L. No. 106-386, § 102(a)(3), 114 Stat. 1466.

civil remedy provision creates a cause of action that sounds in tort" (internal quotation marks omitted)). Of course, whether and/or in what amount punitive damages should be awarded to the plaintiffs in this particular case are matters left to be determined on remand.

### C. Compensatory Damages

From what we have already said in connection with punitive damages, the *Franklin* inquiry with respect to compensatory damages should not detain us for long. Nothing in the statute's text, on its face or considered in light of legislative history, provides a clear direction to exclude compensatory damages ordinarily allowable in tort. The only question is whether such damages, or at least the specific sub-types of such damages sought by the plaintiffs, are appropriate. That is, do they make good the kind of wrong addressed by the TVPA, and do so in a manner consistent with the purpose of the statute. They do.

As noted above, the TVPA is intended to remedy conduct condemned as outrageous, involving significant violations not only of labor standards but fundamental health and personal rights as well. With respect to the former, there is nothing inappropriate in requiring those who have engaged in or benefited from forced labor to rectify the wrong by compensating the victim at the prevailing wage rate for the work done. As explained earlier, *see supra* note 3, that is more than would be awarded under the FLSA, but the FLSA simply remedies the failure to pay wages at the statutory minimum rage, so compensation determined by reference to

Case 1:10-cv-00332-CMA-MEH   Document 110   Filed 05/28/13   USDC Colorado   Page 15 of 18
Appellate Case: 12-1376   Document: 01019061599   Date Filed: 05/28/2013   Page: 15

the shortfall makes good that wrong. The forced labor addressed by the TVPA is a categorically different wrong, involving work extracted from victims by the illegal and coercive means specified in the statute. Limiting TVPA victims to the FLSA remedy would *inappropriately* afford criminals engaged in such egregious practices the benefit of the lowest-common-denominator minimum wage set for legitimate employers. As for damages to redress noneconomic harm, particularly suffering related to the squalid, restricted, and threatening working/living conditions imposed on TVPA victims, the case law consistently reflects the propriety of providing the traditional tort remedy of damages for emotional distress caused by outrageous conduct. *See, e.g.*, *Doe*, 2012 WL 3834867, at *3-*4 (awarding, and discussing several prior cases that awarded, substantial emotional distress damages for TVPA violations); *Pena Canal*, 2010 WL 3491136, at *4. That is consistent with the availability of such damages under other federal statutes. *See, e.g.*, *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1114-15 (10th Cir. 2001) (addressing § 1981); *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1213-14 (10th Cir. 2000) (addressing § 1983).

Our holding is limited: damages of the sort sought by plaintiffs are available as a general matter under the TVPA; we direct no particular award. On remand, plaintiffs should be allowed an adequate opportunity, either at an evidentiary hearing or by documentary proffer, to support their requests for damages with whatever evidence and associated argument is deemed necessary.

the shortfall makes good that wrong. The forced labor addressed by the TVPA is a categorically different wrong, involving work extracted from victims by the illegal and coercive means specified in the statute. Limiting TVPA victims to the FLSA remedy would *inappropriately* afford criminals engaged in such egregious practices the benefit of the lowest-common-denominator minimum wage set for legitimate employers. As for damages to redress noneconomic harm, particularly suffering related to the squalid, restricted, and threatening working/living conditions imposed on TVPA victims, the case law consistently reflects the propriety of providing the traditional tort remedy of damages for emotional distress caused by outrageous conduct. *See, e.g.*, *Doe*, 2012 WL 3834867, at *3-*4 (awarding, and discussing several prior cases that awarded, substantial emotional distress damages for TVPA violations); *Pena Canal*, 2010 WL 3491136, at *4. That is consistent with the availability of such damages under other federal statutes. *See, e.g.*, *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1114-15 (10th Cir. 2001) (addressing § 1981); *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1213-14 (10th Cir. 2000) (addressing § 1983).

Our holding is limited: damages of the sort sought by plaintiffs are available as a general matter under the TVPA; we direct no particular award. On remand, plaintiffs should be allowed an adequate opportunity, either at an evidentiary hearing or by documentary proffer, to support their requests for damages with whatever evidence and associated argument is deemed necessary.

The judgment of the district court, insofar as it relates to the damages awarded to plaintiffs, is reversed and the case is remanded for further proceedings consistent with the principles discussed in this order and judgment.

        Entered for the Court

        Terrence L. O'Brien
        Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker　　　　　　　　May 28, 2013　　　　　　　　Douglas E. Cressler
Clerk of Court　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Deputy Clerk

Mr. Ishan Bhabha
United States Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Avenue, NW
1264
Washington, DC 20530

Mr. Matthew S. Hellman
Mr. Matthew E. Price
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412

Ms. Patricia Medige
Colorado Legal Services
1905 Sherman Street
Suite 400
Denver, CO 80203-0000

**RE:**　**12-1376, Francisco, et al v. Susano, et al**
　　　　Dist/Ag docket: 1:10-CV-00332-CMA-MEH

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements.

In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

EAS/lg